## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CHERYL A. GREENBERG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OPINION** |
| v. ) | **AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | 1:07CV530 |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

Plaintiff, Cheryl A. Greenberg, brought this action pursuant to section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the court for review.

**Procedural History**

Plaintiff filed an application for Disability Insurance Benefits (DIB) on February 4, 2003, with an alleged onset of disability (AOD) of April 24, 2001.[1] Tr. 95. The application was denied initially and upon reconsideration. Tr. 32, 33. Plaintiff requested a hearing de novo before an Administrative Law Judge (ALJ). Tr. 52.

---

[1] Plaintiff had previously filed a DIB application in December 2001 alleging the same AOD. See Tr. 17, 127. That claim was denied initially and on reconsideration, but a request for hearing was dismissed as untimely, Tr. 39, and review denied by the Appeals Council, Tr. 34.

Present at the hearing, held on August 25, 2005, were Plaintiff, her attorney, a medical expert (ME), and a vocational expert. See Tr. 445. A different ALJ held a second hearing on March 1, 2006, attended by only Plaintiff and her attorney. See Tr. 515.

By decision dated May 12, 2006, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. Tr. 17. On May 16, 2007, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, Tr. 7, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review.

In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2006.
>
> 2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b) and 404.1571 *et seq.*).
>
> 3. The claimant has the following severe combination of impairments: lumbar degeneration, left ankle injury (minor fracture in September 2002), right arm neuropathy, and fibromyalgia (20 CFR 404.1520(c)).

Tr. 19. He continued:

> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). . . .

2

> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work involving lifting/carrying 10 pounds frequently and 20 pounds occasionally, with no prolonged periods of standing/walking, and sitting 6 hours out of 8 hours. Postural activities can be done occasionally.

Tr. 20. The ALJ decided that Plaintiff was able to perform her past relevant work and, thus, was not under a "disability," as defined in the Act, from April 24, 2001, through the date of his decision. Tr. 26 (citing 20 C.F.R. §§ 404.1565 and 404.1520(f)).

## **Analysis**

In her brief before the court, Plaintiff argues that the Commissioner's findings are in error because (1) the ALJ's decision as to Plaintiff's residual functional capacity is not supported by the evidence of record; (2) the ALJ erred in finding that Plaintiff's mental impairment was not severe; and (3) the ALJ improperly evaluated Plaintiff's credibility. The Commissioner contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled.

### Scope of Review

The Act provides that, for "eligible"[2] individuals, benefits shall be available to those who are "under a disability," defined in the Act as the inability:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

---

[2] Eligibility requirements for DIB are found at 42 U.S.C. § 423(a)(1).

42 U.S.C. § 423(d)(1)(A).[3]

To facilitate a uniform and efficient processing of disability claims, the Social Security Administration, by regulation, has reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Act's listing of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing any other work. Section 404.1520.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). Substantial evidence is:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is

---

[3] The regulations applying this section are contained in the Code of Federal Regulations (C.F.R.) at Title 20, "Employees' Benefits," and all regulatory references will be thereto.

> evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that this conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

Issues

1. Residual Functional Capacity

Plaintiff asserts that the medical evidence shows that she is precluded from performing any substantial gainful activity. In support of her claim, Plaintiff points to her consistent complaints to her physicians of cervical, lumbar, leg, and ankle pain; the variety of treatments she has undergone; and a somewhat belated functional assessment by a treating physician.

These assertions certainly cannot be denied, at least through December 2005.[4] An assessment of residual functional capacity (RFC), however, requires more than the claimant's subjective complaints. Not until "the existence of a medically determinable physical or mental impairment(s) that *could reasonably be*

---

[4] Plaintiff produced only one medical record for the period between December 22, 2005, and the ALJ's May 2006 decision.

*expected to produce the pain or other symptoms alleged* has been established on the basis of medical signs and laboratory findings" does the fact finder consider "allegations about the intensity and persistence of the symptoms . . . and all other evidence in the case record, in evaluating the functionally limiting effects of the impairment(s)." Social Security Ruling (SSR) 96-4p, 61 Fed. Reg. 34488-01, 34489 (emphasis added).

In Plaintiff's case, the ALJ specifically found that Plaintiff "does *not* have a medically determinable impairment which reasonably could be expected to produce the actual subjective symptoms, in the amount and degree, alleged by the claimant." Tr. 21 (emphasis added). He pointed out that, after Plaintiff's May 2001 cervical fusion, cervical x-rays showed only mild degenerative disc disease. Tr. 22; see also Tr. 181. The day before these studies, Plaintiff was "playing wrestling" with her son. Tr. 176.

The ALJ also discussed the objective findings relating to Plaintiff's left ankle complaints. See Tr. 22-23. At the time of Plaintiff's September 2002 fall, the x-ray diagnostician described Plaintiff's ankle injury as a "chip fracture." Tr. 174. Plaintiff's podiatrist described her injury as a small avulsion fracture. Tr. 187; see also Tr. 189. A month later, Plaintiff was "doing much better" and had very little swelling, improved range of motion, and no clinical instability. Tr. 188.

Plaintiff continued, however, to complain of ankle pain, and consulted orthopedic surgeon John Papa in January 2003. See Tr. 209-11. He ordered a

6

magnetic resonance imaging ("MRI") scan, which was normal. Tr. 192-93. In July 2003, Dr. Papa found that Plaintiff's x-rays were unremarkable, showing the avulsion fracture fragment to be united, with no degenerative changes. Tr. 203.

Plaintiff's ankle complaints continued into 2004. In December, her treating podiatrist advised Plaintiff that she had "developed significant inflammation along the lateral foot and ankle structures," but they could expect improvement, if not a resolution, in her symptoms. Tr. 377.

Plaintiff's complaints include lower back pain, and the ALJ noted that a February 2002 MRI showed a bulge at L5-S1 that was "'mild.'" Tr. 25; see also Tr. 230. The MRI reflected neither stenosis nor foraminal compromise. At a July 1, 2003, examination, Plaintiff's extremities were without edema, her muscle strength was five of five, and her gait was normal. Tr. 23; see also Tr. 214. By the end of the month, Plaintiff reported "doing very well" since the July 1 visit, with her pain well controlled with medications and without "any adverse effects." Id.; see also Tr. 23.

After moving to North Carolina from Florida, Plaintiff consulted a new orthopedic practice in October 2005. Her physical examination revealed no significant atrophy; negative straight leg raising, both sitting and supine; and good range of motion of the shoulder, elbow, and wrist. See Tr. 24. Although not mentioned by the ALJ, Plaintiff's deep tendon reflexes were one-plus and symmetric; she exhibited no clonus; her motor strength was generally five of five; and her sensation was intact grossly to light touch. Tr. 409.

7

In October 2003, Plaintiff experienced a right upper extremity injury of somewhat undecided origin,[5] resulting in generalized numbness of her right forearm and hand.  See Tr. 370.  Electrodiagnostic testing indicated severe right radial mononeuropathy.  Tr. 256-57; see also Tr. 23.  By the time Plaintiff consulted an orthopedist in January 2004, she had already regained some sensory and motor function.  See Tr. 371.  Although there were negative findings on Plaintiff's physical exam, the orthopedist opined that Plaintiff would continue to experience recovery of function.  Tr. 371-72.

This wealth of studies provides substantial evidence to support the ALJ's finding that Plaintiff's established impairments could not reasonably be expected to result in her extensive complaints.  In addition, the ME generally testified that Plaintiff's objective findings failed to support the extent of her physical complaints.  See Tr. 495-508; see also Tr. 24-25.

The ALJ, however, *did* find that Plaintiff suffered from some severe physical impairments, and thus assessed her RFC as "light,"[6] with additional restrictions.  In so doing, he reviewed her extensive medical records, her testimony, and the ME's

---

[5]  Plaintiff offered one explanation to her physiatrist, Dr. Diane Harper, and another to a consulting orthopedist and to the doctor who conducted her nerve study.  Compare Tr. 258 to Tr. 256, 370.

[6]  SSA has defined "light" work to include the ability to stand or walk, "off and on, for a total of approximately 6 hours of an 8-hour workday," with sitting possibly occurring "intermittently during the remaining time."  See SSR 83-10, 1983-1991 Soc. Sec. Rep. Serv. 24, 29 (West 1992).

8

testimony, and specifically discussed evident contradictions. Tr. 25. The ALJ further considered the recommendations of state agency consultants that Plaintiff could engage in light exertional work. Tr. 26. See Section 404.1527(f) (state agency consultants are experts in Administration disability programs, and fact finders must consider their findings of fact). In light of the ALJ's reasoning, the court finds no reversible error in his RFC finding.

Plaintiff urges that the ALJ is bound to accept the opinion of her treating physician who belatedly opined as to her functional limitations. The regulations require that all medical opinions in a case be considered. Section 404.1527(b). Treating physician opinions, however, are accorded special status. See section 404.1527(d)(2). "Courts typically 'accord greater weight to the testimony of a treating physician because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant.'" Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) (quoting Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (internal citation omitted)).

As Plaintiff noted, she did not submit Dr. Richard Ramos's opinion for consideration until after the date of the ALJ's decision.[7] Generally, the Appeals Council's review is limited to evidence already in the record, but it must evaluate

---

[7] In fact, Plaintiff did not have her first appointment with Dr. Ramos until a mere week before the ALJ issued his decision. See Tr. 420. As the relevant period for a disability case dates through the ALJ's decision, Dr. Ramos clearly was not Plaintiff's "treating physician" during the pendency of her case.

9

additional evidence a claimant submits with her request for review if such evidence is new, material, and "relates to the period on or before the date of the [ALJ's] decision." Section 404.970(b).

In declining Plaintiff's request for review, the Appeals Council explained that, although it had considered Plaintiff's brief and "additional evidence," including Dr. Ramos's assessment, it "found that this information does not provide a basis for changing the [ALJ]'s decision." Tr. 7-8. This court does not, either, and Dr. Ramos himself provides its rationale: his opinion plainly states that it is not applicable before its date of July 5, 2006. Tr. 418. Because the opinion does not relate to the relevant period, there is no need to remand for the ALJ's consideration of Dr. Ramos's opinion.

2. Severity

Plaintiff next argues that the ALJ erred in finding that her mental impairment was not severe. According to Administration practice, an impairment is "not severe" if it is only "a slight abnormality . . . that has no more than a minimal effect on the ability to do basic work activities." SSR 96-3p, 61 Fed. Reg. 34468-01, 34469. See also section 404.1520(c). During the severity assessment, the adjudicator is required to make "a careful evaluation of the medical findings that describe the impairment(s) (i.e., the objective medical evidence and any impairment-related symptoms)." SSR 96-3p, 61 Fed. Reg. at 34469. But Plaintiff's records fail to include either objective or subjective evidence that a mental impairment affected her

ability to perform basic work activities. See section 404.1512(c) (a claimant must provide medical evidence that she had an impairment and how severe it was).

Plaintiff's state disability agency filings contain no mention of a mental health impairment, and she attributed her inability to work to a number of *physical* ailments. See Tr. 117, 120. Cf. Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001) (finding it "significant" to the severity analysis that plaintiff failed to allege depression in her benefits application). Plaintiff admitted that she had not sought mental health treatment. Tr. 120. Cf. Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (the failure to seek help constitutes a reason for discounting subjective claims). At her hearing, Plaintiff testified that she could not work only because she was unable either to sit or stand for very long. Tr. 489.

Plaintiff's medical records are likewise unsupportive. Dr. Harper, who saw Plaintiff several times a year from 2000 through 2004,[8] never included in her records of Plaintiff's visits a diagnosis of a mental health impairment. She often described Plaintiff as having a "bright" or "brighter" affect. See, e.g., Tr. 217, 221, 223, 229, 231, 233, 238, 385, 386.

When these observations differed, it was in response to a given stimulus. When Dr. Harper observed a "blunted affect," Plaintiff was experiencing "significant psychosocial stressors." Tr. 218. Plaintiff appeared "anxious" during a period when

---

[8] Plaintiff relocated to North Carolina from Florida in the summer of 2004. See Tr. 455.

11

she had no medical insurance and could not afford an effective pain medication. Tr. 215. Dr. Harper described Plaintiff as "somewhat anxious" after a relocation, where she did most of the moving herself and, in addition, lost her prescriptions and ran out of her pain medications. Tr. 260.

On the other hand, Plaintiff's mood and affect were both normal when she presented to the emergency department for treatment, even though she placed her pain at ten on a ten-point scale. See Tr. 176, 179. When she returned after injuring her ankle, she was calm and cooperative. Tr. 171. The successor to Dr. Harper, Dr. Stuart Meloy, described Plaintiff's affect as "quite pleasant." Tr. 359. Neither Dr. Harper's records, nor those of any of her other treating physicians, reveal complaints from Plaintiff of mental symptoms, and none memorialize observations of same. Plaintiff never sought out mental health treatment, and she received an anti-depressant prescription not for depression, but in treatment for her fibromyalgia and for sleep. See Tr. 251, 345, 487. See also Jones v. Callahan, 122 F.3d 1148, 1153 (8th Cir. 1997) (affirming ALJ's finding of non-severity, in part, because claimant was neither undergoing regular treatment nor regularly taking medication).

Dr. Harper's medical records underlie her answers to a questionnaire forwarded to her by the state disability agency, see Tr. 199-201, which in turn, support the ALJ's severity decision. Dr. Harper described as "normal" Plaintiff's thought process and thought content. She answered that Plaintiff's concentration was "average" throughout her visits with the doctor. Tr. 200. Plaintiff orientation and

12

short and long term memories were all intact. Dr. Harper stated that Plaintiff had a positive attitude and appropriate behavior. Two state agency mental health consultants referenced Dr. Harper's responses in finding that Plaintiff's mental impairment was not severe. See Tr. 318, 330; 333, 345. A third consultant reached the same conclusion. See Tr. 303, 315.

To be sure, Dr. Harper diagnosed Plaintiff with depression, but as secondary to chronic neck and low back pain. Tr. 201. Most important, the doctor added that she found "[n]o significant mental impairment," and repeated that Plaintiff's depression was "related to chronic pain issues." Id. The state consultants echoed this opinion. See Tr. 306, 315, 321, 336.

The court finds Dr. Harper's conclusions insightful in light of Plaintiff's allegation that the ALJ committed reversible error in "diagnosing" Plaintiff with "reactive depression," thus substituting his layperson's opinion for that of a physician. Yet the ALJ also described Plaintiff's depression as "situational," Tr. 20, as did the ME, Tr. 497, and this description, as well as the adjective "reactive," are appropriately conclusive of Dr. Harper's assessment. In addition, the state consultants described Plaintiff's depression as secondary to pain, Tr. 315, 321, 336 – one specifically suggesting that Plaintiff had a likely "adjustment" disorder, Tr. 306. The court thus finds no reversible error.

In support of a severity finding, Plaintiff refers to a "Psychiatric Disability Evaluation" which she attended at the request of her attorney, see Tr. 405-08, and

13

the examiner's resulting answers to a questionnaire, see Tr. 392-404; see also Tr. 20.  But this court will not substitute its judgment for that of the Commissioner in deciding conflicts of evidence, provided that substantial evidence supports his decision.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  The results of this one-time evaluation were so disparate from the remainder of the record that it fails to render the ALJ's decision unsupported.  Cf. Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) (upholding ALJ's rejection of treating physician's opinion because the record contained persuasive contradictory evidence and the treating physician's own notes contradicted his opinion).  In addition, the ME testified that the examiner's diagnosis of major depressive disorder was unsupported.[9]  See Tr. 497.  Thus, Plaintiff's argument fails on this point, also.

3. Credibility

Plaintiff argues that the ALJ erred in finding that she was "not entirely credible," Tr. 25, as evidenced by the record of her persistent complaints of pain and her ongoing efforts to seek relief from this pain from specialists and from surgery, epidural injections, nerve blocks, and narcotic medications.  Again, this court is

---

[9] I can't make a lot out of [the Psychiatric Disability Evaluation] because [the examiner], without an adequate assessment, in my judgement, it made a diagnosis of major depressive disorder and I don't think given the history that they presented in this report that they can make that diagnosis quite frankly. I think she probably has had a situation[al] depression. Everybody has with, with a long term illness.

Tr. 497.

14

precluded from conducting a de novo review of the evidence, and must assess only errors of law and whether the Commissioner's decision is supported by substantial evidence.  See Richardson v. Perales, 402 U.S. 389 (1971); Johnson, 434 F.3d at 653; Mastro, 270 F.3d at 176.

Under Craig, 76 F.3d at 591-96, subjective complaints of pain are evaluated in two steps.  First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged.  Not until such underlying impairment is established does the fact finder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to assess the credibility of the severity of the subjective complaints.  See also section 404.1529(b); Ruling 96-7p, 61 Fed. Reg.  34483, 34484-85.  An ALJ's assessment of a claimant's credibility regarding the severity of pain is entitled to great weight when it is supported by the record.  See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984).

As discussed in Issue 1, supra, the ALJ decided that Plaintiff did not meet her burden at Craig's step one, in that the objective evidence did not establish "a medically determinable impairment which could reasonably be expected to cause not just pain, or some pain, or pain of some kind or severity, but *the pain the claimant alleges she suffers,*" or "'which could reasonably be expected to produce' the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d

15

at 594 (quoting section 404.1529(b)) (emphasis added).  This finding is supported by substantial evidence.  Accordingly, the ALJ was not required to assess the credibility of Plaintiff's subjective complaints.

**Conclusion and Recommendation**

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence and the correct legal principles were applied.  Therefore, **IT IS RECOMMENDED** that the Commissioner's decision finding no disability be **AFFIRMED**.  To this extent, Plaintiff's motion for summary judgment (pleading no. 9) seeking a reversal of the Commissioner's decision should be **DENIED**, Defendant's motion for judgment on the pleadings (pleading no. 12) should be **GRANTED**, and this action should be **DISMISSED** with prejudice.

_/s/ Wallace W. Dixon_
WALLACE W. DIXON
United States Magistrate Judge

November 14, 2008